UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MARK WESTCOTT; G. TRAVIS WHITEHEAD;
DOUG IRISH; WILLIAM MAHAR;
AVA ASHENDORFF; and ROBERT SCHULZ,

                                Plaintiffs,                1:16-CV-1088
                                                  (GTS/CFH)
v.

WARREN COUNTY BOARD OF SUPERVISORS,

                                Defendant.
_____

APPEARANCES:                            OF COUNSEL:

MARK WESTCOTT
  Plaintiff, *Pro Se*

G. TRAVIS WHITEHEAD
  Plaintiff, *Pro Se*

DOUG IRISH
  Plaintiff, *Pro Se*

WILLIAM MAHAR
  Plaintiff, *Pro Se*

AVA ASHENDORFF
  Plaintiff, *Pro Se*

ROBERT SCHULZ
  Plaintiff, *Pro Se*

HON. BRIAN REICHENBACH           BRIAN REICHENBACK, ESQ.
Warren County Attorney               County Attorney
  Counsel for Defendant              MARY ELIZABETH KISSANE, ESQ.
                                   Assistant County Attorney

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this voting rights action filed by the six above-captioned individuals ("Plaintiffs") against the Warren County Board of Supervisors ("Defendant" or "Board of Supervisors"), are the parties' cross-motions for summary judgment. (Dkt. Nos. 18, 25.) For the reasons set forth below, Plaintiffs' motion[1] is denied; and Defendant's cross-motion is granted.

## I. RELEVANT BACKGROUND

### A. Plaintiff's Claims

Generally, liberally construed, Plaintiffs' Verified Complaint alleges that Defendant has enacted apportionment legislation under which members of the Warren County Board of Supervisors (who are elected by their towns and wards) exercise their voting power arbitrarily and discriminatorily (weighting their votes at monthly Board meetings based on the varying populations of their respective towns and wards, some of which constitute single-member districts that by definition vote as a bloc and other of which constitute multi-member districts that often do not vote as a bloc, but not weighing their votes at more-frequent committee meetings) rather than rationally and equally (based on substantially equal populations that would result from drawing certain new districts as proposed by Plaintiffs). (*See generally* Dkt. No. 1 [Plf.'s Compl.].)

---

[1] Although this motion was filed only by Plaintiffs Westcott, Whitehead, Mahar, and Irish, the Court notes that Plaintiffs Ashendorf and Schulz filed replies to Defendant's opposition to the motion; as a result, the Court will refer to the motion as "Plaintiffs' motion," for the sake of simplicity.

Generally, based on these allegations, the Verified Complaint claims that Defendant has violated the "one person, one" vote principle of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution, and Article I, Section 11 of the New York State Constitution. (*Id*.)

Generally, as relief, the Verified Complaint requests a judgment declaring that the Warren County Board of Supervisors is unconstitutionally apportioned, that Waren County must submit a proposed reapportionment plan within ninety days, and that the reapportionment plan proposed by Plaintiff "meets [with] Court Acceptance." (*Id*.)

Familiarity with the particular nature of the Verified Complaint's factual allegations, claims and request for relief is assumed in this Decision and Order, which is intended primarily for the review of the parties. (*Id*.)

**B.      Parties' Arguments on Their Cross-Motions for Summary Judgment**

**1.      Plaintiffs' Memorandum of Law**

Generally, in support of their motion, Plaintiffs assert two arguments. (*See generally* Dkt. No. 18, Attach. 19 [Plfs.' Memo. of Law].)

First, Plaintiffs argue, based on the current record, a rational fact finder must conclude that Defendant's apportionment and weighted voting legislation violates the Fifth and Fourteenth Amendments for the following reasons: (a) the mix of 15 single districts (five of which are wards within the municipality of Glens Falls and have significantly different populations) and one multi-member district (the Town of Queensbury) is arbitrary and discriminatory (given the fact that, *inter alia*, fewer representatives are elected per person in the multi-member Town of

Queensbury district than in the single-member districts, and the fact that, even with weighted voting, Queensbury representatives seldom vote as a bloc while a single-member town by definition votes as a bloc); and (b) the mix of weighted voting (at monthly Board meetings) and unweighted voting (at more-frequent committee meetings, in which resolutions are passed for consideration by the Board, where they stand a 98% chance of passing) is arbitrary and discriminatory. (*Id*.)

Second, Plaintiffs argue, Defendant's legislative apportionment can be rendered constitutional by eliminating weighted voting and multi-member districts as the vast majority of counties in the State of New York have done, and instead approving (and indeed imposing if necessary) Plaintiffs' proposed reapportionment plan, which (a) combines ten of the smaller towns into three districts that approximate the size of moderately sized towns, and (b) divides Queensbury into four wards (and re-divides Glens Falls into two wards) that also approximate the size of moderately sized towns. (*Id*.)

### 2. Defendant's Opposition Memorandum of Law

Generally, in opposition to Plaintiffs' motion and in support of its own cross-motion, Defendant asserts four arguments. (*See generally* Dkt. No. 25, Attach. 3 [Def.'s Opp'n Memo. of Law].)

First, Defendant argues, as a threshold matter, the claims of five of the six Plaintiffs should be dismissed for lack of standing, for the following reasons: (a) while the road frontage of the parcel on which Plaintiff Schultz lives is in Warren County, the residential structure on the parcel is located in Washington County; (b) Plaintiffs Westcott, Whitehead and Irish are residents of the Town of Queensbury, which is actually *over*-represented on the Board; and (c)

Plaintiff Ashendorf does not have standing in that she is a resident of the Town of Chester, which is not under-represented on the Board. (*Id*.)

Second, Defendant argues, with regard to Plaintiffs' second argument, the Complaint's request for relief (i.e., the Court's approval of Plaintiffs' proposed reapportionment plan, should the Court find that Warren County's current form of government and proposed alternatives do not satisfy constitutional requirements) raises a non-justiciable political question that should be resolved through the political process set forth in N.Y. Alternative County Government Law § 651, which allows the voters of the County to determine the form of government they prefer (if a change is required). (*Id*.)

Third, Defendant argues, with regard to Plaintiffs' first argument, Warren County's form of government satisfies constitutional requirements, for the following reasons: (a) the committee system as established and practiced by Warren County is statutorily and constitutionally proper (in that, *inter alia*, such a committee system was approved by the Second Circuit in *Roxbury Taxpayers Alliance v. Delaware Cnty. Bd. of Supervisors*, 80 F.3d 42, 45 [2d Cir. 1996], and indeed under the system a single supervisor can and often does advance a resolution to the full Board of Supervisors for a vote regardless of committee action on the proposal, and in any event, no action can be taken on any proposed resolution except upon a majority of the weighted vote of the full voting strength of the Board); and (b) Warren County's Board of Supervisors' weighted voting rules achieve the one-person-one-vote standard required by the Constitution (in that Warren County's rules survive the *quantitative* inquiry used by the Second Circuit in *Roxbury* and *Morris v. Bd. of Estimate*, 831 F.2d 384 (2d Cir. 1987), Warren County's rules

survive the *qualitative* inquiry used in *Roxbury*,[2] and Warren County's government is a constitutionally permitted method to preserve traditional political subdivisions within the County which sometimes have distinct interests).  (*Id.*)

Fourth, Defendant argues, Plaintiff's motion should be denied because it violates Local Rule 7.1 of the Local Rules of Practice for the Court in that, rather than citing to competent record evidence, the factual assertions contained in Plaintiffs' Rule 7.1 Statement largely cite to record sources that are improper, without authority or without foundation.  (*Id.*)

### 3.    Plaintiffs' Reply/Opposition Memoranda of Law

### a.    Plaintiffs Westcott, Whitehead, Irish and Ashendorff's Reply/Opposition Memorandum of Law

Generally, in reply to Defendant's opposition, and in opposition to Defendant's memorandum of law-in-chief, Plaintiffs Westcott, Whitehead, Irish and Ashendorff assert four arguments.  (*See generally* Dkt. No. 27 [Plfs. Westcott, Whitehead, Irish and Ashendorff's Reply Memo. of Law].)

First, they argue, with regard to Defendant's first argument, Plaintiffs concede that Plaintiff Schultz appears to lack standing and continue to argue that Plaintiff Ashendorf has standing; however, the issue of standing is moot because (a) one of the six Plaintiffs (i.e.,

---

[2]    The Court notes that, in making this argument, Defendant responds to Plaintiffs' suggestion (on page 7 of their memorandum of law) that Defendant's rules permit, or will permit, one representative or a group of representatives to dominate the Board (e.g., once the Town of Queensbury achieves a majority position) for the following reasons: (1) the Town of Queesnbury is 7.5% of the County's total population away from achieving that majority position, and it may or may not ever exceed 50% of that total population; and (2) achieving a majority position does not create a constitutional problem because the solution to that problem exists in the County's apportionment and weighted voting law (e.g., increasing the number of representatives from the Town of Queensbury so that each representative holds a smaller interest in the total voting power of the Town).  (*Id.*)

Plaintiff Mahar) has standing, and (b) lack of standing of other plaintiffs is irrelevant where, as here, the plaintiff with standing does not seek monetary relief but seeks only declaratory relief. (*Id*.)

Second, they argue, with regard to Defendant's second argument, Plaintiffs' Complaint does not present a non-justiciable political issue when one balances the six factors set forth by the Supreme Court in *Baker v. Carr*, 369 U.S. 186 (1962); and, in any event, Defendant's solution to that problem is reliance on an arcane legal method, which approach is strongly disfavored by the Supreme Court. (*Id*.)

Third, they argue, with regard to Defendant's third argument, by relying on the *Roxbury* and *Morris* decisions (which are distinguishable from our case), Defendant neglects to rebut the failure of the "Rockland County experiment" (which used mixed multi-member districts), and Defendant also neglects to sufficiently rebut Plaintiffs' argument that, even with weighted voting, Queensbury representatives seldom vote as a bloc while a single-member town by definition votes as a bloc. (*Id*.)

Fourth, they argue, with regard to Defendant's fourth argument, Plaintiffs Westcott, Whitehead, Irish and Ashendorff's admission of the facts asserted in Defendant's Rule 7.1 Statement obviates the need to deny Plaintiffs' motion on the ground of various deficiencies in their own Rule 7.1 Statement. (*Id*.)

### b. Plaintiff Mahar's Reply/Opposition Memorandum of Law

Generally, in reply to Defendant's opposition, and in opposition to Defendant's memorandum of law-in chief, Plaintiff Mahar assert two arguments. (*See generally* Dkt. No. 28 [Plf. Mahar's Reply Memo. of Law].)

First, Plaintiff Mahar argues, with regard to Defendant's second argument, Plaintiffs' Complaint presents a justiciable issue when one balances the six factors set forth by the Supreme Court in *Baker v. Carr*, and, in any event, Defendant's solution to that problem is reliance on an arcane legal method. (*Id.*)

Second, Plaintiff Mahar argues, a genuine dispute of material fact exists that precludes the granting of Defendant's cross-motion for summary judgment, because (a) the question exists of whether the current weighting method creates any "dummy" members whose weighted votes are unable to affect the outcome of a vote, and (b) the issue of whether the multi-member district of Queensbury operates to minimize or cancel out the voting strength of any racial or political elements of the voting population by significantly under-representing such political element(s) is "best settled at trial." (*Id.*)

### c. Plaintiff Schulz's Reply/Opposition Memorandum of Law

Generally, in reply to Defendant's opposition, and in opposition to Defendant's memorandum of law-in-chief, Plaintiff Schulz argues that he has standing for three reasons: (1) despite the fact that Plaintiff Schulz has been removed from the Warren County voter registration roles, he is in fact qualified to register to vote, and to vote, in Warren County; (2) he has standing to assert a claim under N.Y. General Municipal Law § 51; and (3) he also has standing to obtain relief under N.Y. Finance Law § 123-b.1. (*See generally* Dkt. No. 36 [Plf. Schulz's Reply Memo. of Law].)

### 4. Defendant's Sur-Reply/Reply Memorandum of Law

Generally, in sur-reply to Plaintiffs' replies, and in reply to Plaintiffs' oppositions, Defendant assert three arguments. (*See generally* Dkt. No. 41 [Def.'s Sur-Reply/Reply Memo. of Law].)

First, Defendant argues, Plaintiffs Westcott, Whitehead, Irish and Ashendorff's reliance on the Southern District of New York's case of *Abate v. Rockland Cnty. Legislature*, 964 F. Supp. 817 (S.D.N.Y. 1997), is misplaced, because (a) the Southern District (whose decision, incidentally is not binding on this Court) was expressly *not* applying a weighted voting formula or deciding its constitutionality (but was applying the traditional formula for calculating the extent of deviation from voter equality), and (b) in any event, a year after the Southern District issued its decision in Rockland County, the Second Circuit issued its decision in *Reform of Schoharie Cnty. v. Schoharie Cnty. Bd. of Supervisors*, 152 F.3d 920 (2d Cir. 1998), in which it continued to rely on its reasoning in *Roxbury*. (*Id.*)

Second, Defendant argues, its "at-large" supervisory system in Queensbury is constitutional, because (a) Plaintiffs' argument about bloc voting versus non-bloc voting has been rejected by both the United States Supreme Court and New York Court of Appeals, which require a showing of a "built-in bias tending to favor particular political interests or geographic areas" (which showing has not been made here), and (b) in any event, Plaintiffs' argument about bloc voting versus non-bloc voting confuses their right to vote for representatives members of the legislative body (which is constitutionally guaranteed) with a right to have those representatives vote a certain way (which is not constitutionally guaranteed). (*Id.*)

Third, Defendant argues, Plaintiff Schulz lacks standing, because (a) the two cases on which Schulz relies are distinguishable, and (b) a case involving a situation analogous to Schulz's factual situation supports a finding that he is not resident of Warren County. (*Id.*)

**C.      Undisputed Material Facts on Parties' Cross-Motions**

**1.      Undisputed Material Facts on Plaintiffs' Motion**

Unless otherwise noted, the following facts were asserted and supported with accurate record citations by Plaintiffs' in their Statement of Material Facts ("Plfs.' Rule 7.1 Statement") and expressly admitted (or not denied with a supporting specific record citation) by Defendant in its response thereto ("Def.'s Rule 7.1 Response").  (*Compare* Dkt. No. 18, Attach. 18 [Plfs.' Rule 7.1 Statement] *with* Dkt. No. 25, Attach. 2 [Def.'s Rule 7.1 Response].)

1.      By Local Law No. 2 of 1966, Warren County established weighted voting for its Board of Supervisors.

2.      By Local Law No. 2 of 1971 and Local Law No. 6 of 1981, Warren County amended its earlier weighted-voting law.

3.      By Local Law No. 12 of 2011, Warren County amended its earlier weighted-voting law.

4.      On December 18, 2015, before the monthly meeting of Defendant, Plaintiffs Westcott, Irish and Whitehead, among others, presented the Chairman of the Board with a First Amendment "Petition for Redress of Grievances" which alleged that Defendant's current legislative apportionment is unconstitutional and which requested a "reorganization of the Warren County Government to meet our Federal protections"; the Petition was referred to the Legislative and Rules Standing Committee.

5.      On January 6, 2016, Defendant adopted the Rules of the Board of Supervisors for 2016.

6.      On March 28, 2016, following a presentation by Plaintiff Westcott, and a presentation by Supervisor Craig Leggett, Defendant's Legislative and Rules Standing

Committee authorized a resolution asking Defendant whether it would like to proceed with exploring alternative forms of government or not.[3]

7.      On April 15, 2016, by a weighted vote of 701 to 299, Defendant voted to defeat proposed Resolution No. 195 of 2016 (entitled, "To Explore Alternative Forms of County Government").[4]

8.      According to pages 9 and 10 of *County Government Organization in New York State* (published by the New York State Association of Counties in February of 2015), forty (40) New York State counties outside of New York City have adopted a legislative districting system; sixteen (16) New York State counties outside of New York City (including Warren County) are governed by a County Board of Supervisors; and one New York State county outside of New York City (Otsego County) is governed by a Board of Representatives.[5]

8.      Since 1968, the Town of Queensbury has increased its percentage of Warren County's population from approximately 23% in 1968 to 42.46% in 2010.[6]

9.      In 2016, Defendant had fourteen (14) Standing Committees and one (1) Special Committee.

10.      The membership and Chairmanship of Standing Committees are appointed by the Chairman of Defendant.

---

[3]      (Dkt. No. 18, Attach. 7, at 5 [Plfs.' Ex. E, attaching page 4 from Board Meeting of March 28, 2016].)

[4]      (Dkt. No. 18, Attach. 10 [Plfs.' Ex. H, attaching vote tally]; Dkt. No. 25, Attach. 15, at 10-20 [Def.'s Ex. G, attaching pages 9 through 19 of Minutes from Board Meeting of Apr. 15, 2016].)

[5]      (Dkt. No. 18, Attach. 12, at 2-3 [Plfs.' Ex. J].)

[6]      (Dkt. No. 18, Attach. 1, at ¶¶ 2, 12 [Plfs.' Affid.]; Dkt. No. 18, Attach. 2 [Plfs.' Ex. A]; Dkt. No. 18, Attach. 14 [Plfs.' Ex. L]; Dkt. No. 27, Attach. 28 [Def.'s Ex. T]; Dkt. No. 25, Attach. 29 [Def.'s Ex. U].)

11.    The votes of Defendant and the votes of the Standing and Special Committees are currently weighted as follows:

| Town | Weighted Votes for Defendant | Votes for Standing and Special Committees |
|---|---|---|
| Hague | 11 | 1 |
| Stony Creek | 12 | 1 |
| Thurman | 19 | 1 |
| Horicon | 21 | 1 |
| Glens Falls Ward 4 "Supervisor" | 30 | 1 |
| Bolton | 35 | 1 |
| Johnsburg | 36 | 1 |
| Glens Falls Ward 1 "Supervisor" | 38 | 1 |
| Glens Falls Ward 5 "Supervisor" | 42 | 1 |
| Chester | 51 | 1 |
| Lake Luzerne | 51 | 1 |
| Lake George | 53 | 1 |
| Glens Falls Ward 2 "Supervisor" | 57 | 1 |
| Glens Falls Ward 3 "Supervisor" | 57 | 1 |
| Warrensburg | 62 | 1 |
| Queensbury | 85 | 1 |
| Queensbury at large "Supervisor" | 85 | 1 |
| Queensbury at large "Supervisor" | 85 | 1 |
| Queensbury at large "Supervisor" | 85 | 1 |
| Queensbury at large "Supervisor" | 85 | 1 |
| **Total Votes** | 1,000 | 20 |

12.    Committee voting is not weighted: each member has one vote on matters that come before that Committee where a quorum for conducting business is a simple majority of the number of members on that Committee.[7]

13.    The number of "floor" Resolutions (i.e., Resolutions not generated in committee but passed by Defendant) for the years 2011 through 2015 were as follows: 29 in 2011, 32 in 2012, 25 in 2013, 18 or 19 in 2014,[8] and 9 in 2015; moreover, according to an email message from one of the Clerks of the Board (Amanda Allen) dated March 17, 2016, "[I]n many cases, a motion from the floor actually creates two resolutions, one to waive the Rules of the Board requiring that a resolution be presented [in] writing and a second to actually enact the intended resolution," although "[i]n recent years we have tried to combine the actions in one resolution . . . ."[9]

14.    The total number of Resolutions presented to Defendant for years 2011 to 2015 was as follows: 769 in 2011, 793 in 2012, 738 in 2013, 641 in 2014, and 671 in 2015.[10]

15.    Defendant's 2016 Budget Committee had nine (9) members, meaning that a quorum of the Committee (i.e., the number of members to pass on to Defendant a resolution

---

[7]    (Dkt. No. 18, Attach. 1, at ¶ 3, 6, 17 [Plfs.' Affid.]; Dkt. No. 18, Attach. 4 [Plfs.' Ex. B-2]; Dkt. No. 18, Attach. 6 [Plfs.' Ex. D].)

[8]    Although Plaintiffs adduced evidence that there were nineteen (19) such floor resolutions in 2014 (Dkt. No. 18, Attach. 16 [Plfs.' Ex. N]), Defendant adduced evidence that there were only (18) such floor resolutions in 2014 (Dkt. No. 25, Attach. 5, at ¶ 7 [Sady Affid.]; Dkt. No. 25, Attach. 22 [Def.'s Ex. N]).

[9]    (Dkt. No. 18, Attach. 1, at ¶ 18 [Plfs.' Affid.]; Dkt. No. 18, Attach. 16 [Plfs.' Ex. N]; Dkt. No. 25, Attach. 5, at ¶¶ 5-8 [Sady Affid.].)

[10]    (Dkt. No. 18, Attach. 16 [Plfs.' Ex. N]; Dkt. No. 25, Attach. 5, at ¶¶ 5-8 [Sady Affid.].)

generated in the Committee) was five (5) members.[11]

16.     The members of the 2016 Budget Committee were as follows: Supervisor (and Committee Chairman) Thomas from Stony Creek (population 767), Supervisor Simpson from Horicon (population 1,389), Supervisor Conover from Bolton (population 2,326), Supervisor Girard from Glens Falls Ward 1 (population 2,494), Supervisor Brock from Glens Falls Ward 4 (population 1,968), Supervisor Merlino from Lake Luzerne (population 3,347) and Supervisors-at-Large Strough, Beaty and Sokol from Queensbury (population 27,901).

17.     In the Budget Committee, as few as three (3) votes (e.g., votes of the Supervisors from Stony Creek, Horicon and Glens Falls Ward 4, who represent as little as 6.3% of the total population of Warren County) can advance a Budget Committee-generated Resolution to Defendant.

18.     In 2015, only three (3) Resolutions passed by non-weighted vote in Committees failed to pass in the full Board of Supervisors; and four (4) Resolutions passed by non-weighted vote in Committees were tabled in the full Board of Supervisors.[12]

19.     Currently, Defendant has twenty (20) elected members: fifteen (15) members from single-member districts, and five (5) members from one five-member district (specifically, Queensbury, which has five representatives elected town wide–the Town Supervisor plus the four highest "at large" vote takers).[13]

---

[11]     (Dkt. No. 18, Attach. 1, at ¶ 21 [Plfs.' Affid.]; Dkt. No. 18, Attach. 6 [Plfs.' Ex. D]; Dkt. No. 18, Attach. 15 [Plfs.' Ex. M]; Dkt. No. 25, Attach. 10 [Def.'s Ex. B].)

[12]     (Dkt. No. 18, Attach. 1, at ¶ 27 [Plfs.' Affid.]; Dkt. No. 18, Attach. 17 [Plfs.' Ex. O].)

[13]     (Dkt. No. 18, Attach. 1, at ¶ 25 [Plfs.' Affid.]; Dkt. No. 18, Attach. 4 [Plfs.' Ex. B-2]; Dkt. No. 25, Attach. 19 [Def.'s Ex. K].)

20.     Five (5) of the fifteen (15) single-member districts represented on Defendant are located in the City of Glens Falls, where they are known as "Wards"; the Mayor of Glens Falls does not sit on the Warren County Board of Supervisors.[14]

### 2.     Undisputed Material Facts on Defendant's Cross-Motion

Unless otherwise noted, the following facts were asserted and supported with accurate record citations by Defendant in its Statement of Material Facts ("Def.'s Rule 7.1 Statement") and not denied with a supporting specific record citation by Plaintiffs in any response thereto. (*Compare* Dkt. No. 25, Attach. 1 [Def.'s Rule 7.1 Statement] *with* Dkt. Nos. 27, 28, 36 [Plfs.' Reply Papers, containing no Rule 7.1 Response].)[15]

1.     The structure in which Plaintiff Schulz resides is located wholly within Washington County.

2.     Plaintiff Schulz registered to vote in Warren County on October 14, 2016 (37 days

after Plaintiffs filed their Complaint in this action on September 7, 2016).

---

[14]     (Dkt. No. 18, Attach. 1, at ¶ 26 [Plfs.' Affid.]; Dkt. No. 18, Attach. 4 [Plfs.' Ex. B-2]; Dkt. No. 25, Attach. 19 [Def.'s Ex. K].)

[15]     The Court notes that Plaintiffs were given (1) a courtesy copy of both the Court's Local Rules of Practice and *Pro Se* Handbook, and (2) express and specific notice of the consequences of failing to respond to Defendant's Rule 7.1 Statement in accordance with Local Rule 7.1(a)(3) of the Court's Local Rules of Practice. (Dkt. No. 4, at 2; Dkt. No. 25, at 4.) The Court notes also that, in their opposition to Defendant's Rule 7.1 Statement, Plaintiffs Westcott, Whitehead, Irish and Ashendorff concede, "Plaintiffs do not state that any of Defendant['s] facts are in genuine dispute." (Dkt. No. 27, at 1.) Similarly, in his opposition papers, Plaintiff Mahar appears to expressly defer to Defendant's recitation of the facts, stating that "[t]he mix [of representation methods and varying weights on the Board of Supervisors] is laid out clearly in Defendant's Exhibit J." (Dkt. No. 28, at 3.)

3.      On November 4, 2016, the Warren County Board of Elections removed Plaintiff Schulz from the Warren County Voter Registration rolls.

4.      Plaintiffs Westcott, Whitehead and Irish are residents of the Town of Queensbury, in Warren County.

5.      Plaintiff Ashendorf is a resident of the Town of Chester, in Warren County.

6.      According to the 2010 US Census, the 2010 population of Warren County was 65,707, and the 2010 population of the towns in Warren County was as follows: Bolton 2,326, Chester 3,355; Glens Falls 14,700; Hague 699; Horicon 1,389; Johnsburg 2,395; Lake George 3,515; Lake Luzerne 3,347; Queensbury 27,901; Stony Creek 767; Thurman 1,219; and Warrensburg 4,094.

7.      Each town's percentage of the County population is as follows: Bolton 3.53%, Chester 5.10%, Glens Falls 22.37%, Hague 1.06%, Horicon 2.11%, Johnsburg 3.64%, Lake George 5.34%, Lake Luzerne 5.09%, Queensbury 42.46%, Stony Creek 1.16%, Thurman 1.85%, and Warrensburg 6.23%.

8.      The weighted voting power of each town is as follows: Bolton 3.50%, Chester 5.10%, Glens Falls 22.40%, Hague 1.10%, Horicon 2.10%, Johnsburg 3.60%, Lake George 5.30%, Lake Luzerne 5.10%, Queensbury 42.50%, Stony Creek 1.20%, Thurman 1.90%, and Warrensburg 6.20%.

9.      The deviation between the population percentage and the weighted voting power for each Town is as follows: Bolton -.03%, Chester 0%, Glens Falls .03%, Hague .04%, Horicon -.01%, Johnsburg -.04%, Lake George -.04%, Lake Luzerne .01%, Queensbury .04%, Stony Creek .04%, Thurman .05%, and Warrensburg -.03%.

10.     Resolution No. 649 of 2011, enacting Local Law No. 12 of 2011, was passed on November 18, 2011.

11.     Local Law No. 12 of 2011 reapportioned the weighted voting of the members of Defendant in accordance with the 2010 US Census.

12.     Local Law No. 12 of 2011 currently controls the weighted voting of Defendant.

13.     Resolution No. 1 of 2016 was passed by Defendant on January 6, 2016.

14.     Resolution No. 1 of 2016 established the rules of the Board of Supervisors for 2016.

15.     The Rules of the Board of Supervisors for 2016 created fourteen (14) Standing Committees and one (1) Special Committee for 2016.

16.     Resolution No. 1 of 2017 was passed by Defendant on January 5, 2017.

17.     Resolution No. 1 of 2017 established the Rules of the Board of Supervisors for 2017.

18.     The Rules of the Board of Supervisors for 2017 created fifteen (15) Standing Committees for 2017.

19.     There is no mandate in the 2016 or 2017 Rules of the Board of Supervisors that proposed resolutions be introduced in Committees before they can be presented to Defendant.

20.     Both the 2016 and 2017 Rules of the Board of Supervisors establish that a proposed resolution that is introduced from the floor at a meeting of Defendant can be either (1) referred by the Chairman of Defendant to a Committee or (2) discussed by Defendant and then voted on.

21.    The only body empowered to enact proposed resolutions on behalf of Warren County is Defendant, because all questions must be decided by a majority of the total weighted voting power of Defendant (unless otherwise required by law or as required in the Rules of the Board of Supervisors).

22.    The "Petition for Redress of Grievances" was presented to the Board of Supervisors on December 18, 2015, where it was discussed.

23.    Multiple Supervisors agreed that the issue should be referred to the Legislative and Rules Committee for further review and discussion.

24.    On March 18, 2016, Steve Acquario, the Executive Director of the New York Association of Counties, presented to Defendant an analysis regarding Warren County's form of government.

25.    Several Supervisors and members of the public asked Mr. Acquario questions after his presentation.

26.    On March 28, 2016, the Legislative and Rules Committee discussed the "Petition for Redress of Grievances" and the relief it sought at its meeting.

27.    Plaintiff Wescott, a former Supervisor acting as a member of the public, and Craig Leggett, a current Supervisor, gave presentations at the meeting regarding Warren County's
form of government.

28.    The Legislative and Rules Committee voted unanimously to present the issue to Defendant for consideration.

29.     At Defendant's meeting of April 15, 2016, Resolution 195 of 2016, to Explore

Alternative Forms of County Government, was presented to Defendant by members of the

Legislative and Rules Committee.

30.     After discussion by Defendant, Resolution No. 195 of 2016 was defeated by a

weighted vote of 701 to 299 (fifteen supervisors voting no and five voting yes).

31.     In 2016, five hundred fifty-eight (558) proposed resolutions were presented to

Defendant, of which nineteen (19) were introduced from the floor.

32.     In 2015, six hundred seventy-one (671) proposed resolutions were presented to

Defendant, of which nine (9) were introduced from the floor.[16]

33.     In 2014, six hundred forty-one (641) proposed resolutions were presented to

Defendant, of which eighteen (18) were introduced from the floor.

34.     In 2013, seven hundred thirty-eight (738) proposed resolutions were presented to

Defendant, of which twenty-five (25) were introduced from the floor.

35.     In 2012, seven hundred ninety-three (793) proposed resolutions were presented to

Defendant, of which thirty-two (32) were introduced from the floor.

---

[16]     The Court notes that, although Defendant's Rule 7.1 Statement asserts that ten
(10) of these proposed resolutions were introduced from the floor (Dkt. No. 25, Attach. 1, at ¶
41), Defendant cites to record evidence establishing that only nine (9) of these proposed
resolutions were introduced from the floor (Dkt. No. 25, Attach. 16 [Def.'s Ex. H, attaching
Resolution Nos. 282, 337, 338, 521, 579, and 671]; Dkt. No. 25, Attach. 23 [Def.'s Ex. O,
attaching Resolution Nos. 226, 94, and 93]).  This number of nine (9) is consistent with the
calculations of former Clerk Amanda Allen in her email message of March 17, 2016.  (Dkt. No.
18, Attach. 16 [Plfs.' Ex. N].)  It is also consistent with the calculations of former Clerks
Amanda Allen and Joan Sady in their affidavits.  (Dkt. No. 25, Attach. 4, at ¶ 12 [Allen Affid.];
Dkt. No. 25, Attach. 5, at ¶ 8 [Sady Affid.].)

## II.    RELEVANT LEGAL STANDARDS

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[17]  As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant. *Anderson*, 477 U.S. at 255. In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986).  However, when the movant has met its initial burden, the non-movant must come forward with specific facts showing a genuine issue of material fact for trial.  Fed. R. Civ. P. 56(a),(c),(e).

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant willfully fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute–even if that non-

---

[17]      As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted].  As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

movant is proceeding *pro se*.[18]  (This is because the Court extends special solicitude to the *pro se* litigant largely by ensuring that he or she has received notice of the consequences of failing to properly respond to the motion for summary judgment.)[19]  As has often been recognized by both the Supreme Court and Second Circuit, even *pro se* litigants must obey a district court's procedural rules.[20]

Of course, when a non-movant willfully fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically."  *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Rather, as indicated above, the Court must assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the movant.  *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 7.1(b)(3).  What the non-movant's failure to respond to the motion does is lighten the movant's burden.

For these reasons, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement[21]–even where the non-movant was proceeding *pro se*.[22]

---

[18]     *Cusamano v. Sobek*, 604 F. Supp.2d 416, 426 & n.2 (N.D.N.Y. 209) (Suddaby, J.) (citing cases).

[19]     *Cusamano*, 604 F. Supp.2d at 426 & n.3 (citing cases).

[20]     *Cusamano*, 604 F. Supp.2d at 426-27 & n.4 (citing cases).

[21]     Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a

Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(b)(3).[23] Stated another way, when a non-movant fails to oppose a legal argument asserted by a movant, the movant may succeed on the argument by showing that the argument possess facial merit, which has appropriately been characterized as a "modest" burden. *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

## III. ANALYSIS

After carefully considering the matter, the Court denies Plaintiffs' motion and grants Defendant's cross-motion for each of the reasons stated in Defendant's opposition memorandum of law and sur-reply/reply memorandum of law. (*See, supra,* Parts I.B.2. and I.B.4. of this Decision and Order.) To those reasons, the Court adds five points.

---

specific citation to the record where the factual issue arises. N.D.N.Y. L. R. 7.1(a)(3).

[22] *Cusamano*, 604 F. Supp.2d at 427 & n.6 (citing cases).

[23] *See, e.g., Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

First, despite the fact that Plaintiffs' memorandum of law appears professionally formatted and cites numerous legal authorities in Bluebook form (Dkt. No. 18, Attach. 18), the Court has continued to assume that it was not prepared by an attorney, and has continued to afford the *pro se* Plaintiffs special solicitude in the construction of their papers.

Second, with regard to the first argument asserted in Defendant's opposition memorandum of law (*see, supra,* Part I.B.2. of this Decision and Order), while the Court is inclined to agree with Defendant that five of the six Plaintiffs lack standing, the Court need not, and thus does not, decide this issue for the reason stated by Plaintiffs: the sixth Plaintiff (i.e., Plaintiff Mahar) has standing, and the lack of standing of other plaintiffs is irrelevant where, as here, the plaintiff with standing does not seek monetary relief but seeks only declaratory relief.

Third, with regard to the second argument asserted in Defendant's opposition memorandum of law (*see, supra,* Part I.B.2. of this Decision and Order), while the Court is inclined to agree with Defendant that it would be inappropriate (and premature) to "[a]ccept[]" Plaintiffs' proposed reapportionment plan (if the Court were to find that Warren County's current form of government fails to satisfy constitutional requirements), the Court again need not, and thus does not, decide this issue, because the Court does not find that Warren County's current form of government fails to satisfy constitutional requirements. The Court would merely note that Plaintiffs' proposed plan to combine ten of the smaller towns into three districts[24] appears to disrupt the natural and historical political units of the towns, wherein citizens presumably identify with their respective towns through, among other things, civic organizations.

---

[24]     Specifically, Plaintiffs propose to combine the Towns of Lake Luzerne, Stony Creek and Lake George into one district, the Towns of Hague, Horicon, Bolton and Chester into one district, and the Towns of Warrensburg, Johnsburg and Thurman into one district. (Dkt. No. 1, at 26 [Ex. D to Plfs.' Compl.].)

Fourth, with regard to the fourth argument asserted in Defendant's opposition memorandum of law (*see, supra,* Part I.B.2. of this Decision and Order), while the Court largely agrees with the errors in Plaintiffs' Rule 7.1 Statement identified by Defendant, the Court does not find the errors to be so pervasive as to warrant a finding that Plaintiffs have failed to "submit an accurate and complete Statement of Material Facts" (and warrant a denial of their motion pursuant to Local Rule 7.1[a][3]); rather, the Court finds that the errors warrant a finding that the facts asserted by Plaintiffs have not been supported, resulting in the recitation contained above in Part I.C.1. of this Decision and Order.

Fifth, with regard to the third argument asserted in Defendant's opposition memorandum of law (*see, supra,* Part I.B.2. of this Decision and Order), this argument, of course, addresses the main issue presented by the parties' cross-motions: whether Warren County's form of government satisfies constitutional requirements. In addition to adopting the analysis set forth in Defendant's opposition memorandum of law and sur-reply/reply memorandum of law (which it finds to be both cogent and thorough), the Court relies on the following analysis.

As an initial matter, the Court agrees with Chief Judge Thomas J. McAvoy of this District that, when District Judge Arthur D. Spatt of the Eastern District found (in *Jackson v. Nassau Cnty. Bd. of Supervisors*, 818 F. Supp. 509, 532 (E.D.N.Y. 1993]) that "the Supreme Court firmly rejected weighted voting [in *New York City Bd. of Estimate v. Morris*, 489 U.S. 688 (1989)]," Judge Spatt was "referring specifically to weighted voting systems based on a theoretical Banzhaf Index, and not necessarily to other types of weighted voting plans." *Roxbury Taxpayers Alliance v. Delaware Cnty. Bd. of Supervisors*, 886 F. Supp. 242, 252 (N.D.N.Y. 1995) (McAvoy, C.J.), *aff'd*, 80 F.3d 42 (2d Cir. 1996). This interpretation of *Morris* and

*Jackson* appears shared by the Second Circuit, which (after the issuance of the decisions in *Morris* and *Jackson*) has at least twice affirmed decisions upholding weighted voting systems. *See, e.g., Roxbury Taxpayers Alliance*, 80 F.3d 42; *Reform of Schoharie Cnty. v. Schoharie Cnty. Bd. of Supervisors*, 152 F.3d 920 (2d Cir. 1998).

Moreover, the Court finds that the quantitative/qualitative inquiry captured in the one-person-one-vote standard (which is used in *Roxbury Taxpayers Alliance v. Delaware Cnty. Bd. of Supervisors,* 80 F.3d 42 [2d Cir. 1996], and *Morris v. Bd. of Estimate*, 831 F.2d 384 [2d Cir. 1987]) is useful here. As explained by Judge McAvoy in *Roxbury*, the "quantitative inquiry" is used "to determine whether the weight of each citizen's vote is approximately equal to that of every other citizen," while the "qualitative inquiry" is used to ensure that all citizens are provided fair and effective representation." *Roxbury Taxpayers Alliance*, 886 F. Supp. at 253. As further explained by Judge McAvoy,

> As for the quantitative inquiry, if the analysis reveals a degree of deviation from population equality, this part of the inquiry should also test to see if the degree of deviation falls within the constitutionally acceptable range. This requires the court to determine whether the degree of deviation from population equality can be justified by legitimate government interests. As for the qualitative inquiry, factors to be considered in this analysis include evidence of built-in bias against any particular political interest or group; whether the method of apportionment is so complex as to confuse and alienate the voters; whether one representative has greater than 50% of the votes and effectively 100% of the power, or alternatively, whether the smaller political units are denied an effective voice in board decisions.

*Id.*

With regard to the quantitative inquiry, as correctly argued by Defendant, the Second Circuit found in *Roxbury* that a deviation (from population equality) of .92% was "clearly within constitutional limits." *Roxbury Taxpayers Alliance*, 80 F.3d at 49, *aff'g*, 886 F. Supp. at 254

(McAvoy, C.J.) ("This deviation [of .92%] is clearly within the permissible constitutional range, as defined by *Abate* and its progeny."). Here, the deviation of population quality is only .09%, i.e., the difference between the most over-represented town of Thurman (.05%) and the most under-represented towns of Lake George or Johnsburg (.04%). *See, supra,* Fact No. 9 of Part I.C.2. of this Decision and Order.

With regard to the qualitative inquiry, Plaintiff Mahar appears to misapply the legal standard governing a motion for summary judgment when he argues (in his reply/opposition memorandum of law) that the issue of whether the multi-member district of Queensbury operates to impair the voting strength of any racial or political elements of the voting population is "best settled at trial." *See, supra,* Part I.B.3.b. of this Decision and Order. In its cross-motion for summary judgment, Defendant has met its initial burden of (1) informing the Court of the need for evidence that the multi-member district of Queensbury operates to impair the voting strength of any racial or political elements of the voting population, and (2) identifying those portions of the record that Defendant believes demonstrate the absence of any genuine issue of material fact on that issue; now Plaintiff must come forward with specific facts showing a genuine issue of material fact on that issue. *See, supra,* Part II of this Decision and Order. Plaintiffs have not done so. Based on the current record, it is mere speculation for Plaintiff Mahar to argue that such evidence would appear at trial.

Moreover, the Court does not agree with Plaintiffs' suggestion that any one supervisor could dominate the Board by having greater than 50% of the votes and effectively 100% of the power. Even if the Town of Queensbury were to someday achieve a majority position, the Town is not represented by one Supervisor but five. In addition to the fact that (as Defendant argues)

the number of Supervisors could be increased so that each Supervisor holds a smaller interest in the total voting power of the Town,[25] there is the fact that (as Plaintiffs themselves argue) the Supervisors from the Town need not vote as a bloc and often cancel out each other's vote. (Dkt. No. 18, Attach. 19, at 9 [Plfs.' Memo. of Law]; Dkt. No. 27, at 2 [Plfs. Westcott, Whitehead, Irish and Ashendorff's Reply Memo. of Law].) As a result, the Court cannot conclude that any one supervisor (or even a group of supervisors) could have greater than 50% of the votes. *Cf. Roxbury Taxpayers Alliance*, 80 F.3d at 49 ("[A]lthough the representatives from the five largest towns could combine to effect passage of legislation by a simple majority, consistent with the aggregate population of their districts, no one representative controls a majority of the Board's weighted votes.").

Finally, as correctly argued by Defendant, Plaintiffs' committee-system argument (whether it is construed as being asserted as part of the quantitative inquiry or the qualitative inquiry) is unpersuasive because, under Defendant's committee system, (1) a single supervisor can and sometimes does advance a resolution to the full Board of Supervisors for a vote regardless of committee action on the proposal, and (2) in any event, no action can be taken on any proposed resolution except upon a majority of the weighted vote of the full voting strength of the Board. *See, supra,* Fact Nos. 19-21, 31-35 of Part I.C.2. of this Decision and Order. Indeed, a similar committee system was permitted by the Second Circuit in *Roxbury Taxpayers Alliance v. Delaware Cnty. Bd. of Supervisors*, 80 F.3d 42, 45-46 (2d Cir. 1996) ("Plaintiffs contend that weighted voting was insufficient to assure them equal representation because, given the Supervisors' equal ability to participate in, *inter alia*, floor debates and committee work,

---

[25]     In addition, as Plaintiffs acknowledge, the Town of Queensbury could be divided into wards. (Dkt. No. 18, Attach. 19, at 9 [Plfs.' Memo. of Law].)

Board members from less populous towns had disproportionate ability to influence County legislation. . . . We conclude that [plaintiffs'] contentions are without merit substantially for the reasons stated by the district court.").

For all of these reasons, the Court denies Plaintiffs' motion and grants Defendant's cross-motion.

**ACCORDINGLY,** it is

**ORDERED** that Plaintiffs' motion for summary judgment (Dkt. No. 18) is **<u>DENIED</u>**; and it is further

**ORDERED** that Defendant's cross-motion for summary judgment (Dkt. No. 25) is **<u>GRANTED</u>**; and it is

**ORDERED** that Plaintiff's Verified Complaint (Dkt. No. 1) is **<u>DISMISSED</u>**.

Dated: April 27, 2017
       Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge